# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 2362 | **DATE** | 3/22/2001 |
| **CASE TITLE** | Mark G. Dalen, et al. vs. Kenneth T. Kubiesa, Power & Cronin Ltd., f/k/a Kubiesa, Power & Cronin, an IL Corporation, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 4/12/01 at 9:30 A.M..
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
      ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   Enter Memorandum Opinion and Order. Motion by Kubiesa and Power & Cronin to dismiss Dalen's complaint [40-1] is denied. A status hearing is ordered for Thursday, April 12, 2001, at 9:30 A.M.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | MAR 2 3 2001 date docketed | |
| ✓ | Docketing to mail notices. | | | 57 |
| | Mail AO 450 form. | | IS docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MARK DALEN, et al., <br><br> Plaintiffs, <br><br> v. <br><br> KENNETH T. KUBIESA, POWER & CRONIN LTD., f/k/a KUBIESA, POWER & CRONIN, an Illinois corporation, et al., <br><br> Defendants. | Case No. 98 C 2362 <br><br> Judge Joan B. Gottschall |

DOCKETED
MAR 2 3 2001

## **MEMORANDUM OPINION AND ORDER**

Mark Dalen has filed a two-count complaint against Kenneth Kubiesa and his former law firm, Power & Cronin, alleging legal malpractice. This charge arises from Kubiesa's representation of Dalen in negotiations of a sales contract and a subordination and assignment agreement related to the sale of Dalen's company. Kubiesa and Power & Cronin have moved to dismiss Dalen's complaint. For the reasons set forth below, the defendants' motion to dismiss is denied.

### Background

The following facts are taken from the plaintiff's second amended complaint and are assumed to be true for the purposes of this motion to dismiss. The plaintiff, Dalen, owned a 50% stake in a group of companies called Metropolitan. Dalen entered into a sales contract with Ed Clamage in which Dalen sold his stake in Metropolitan in return for approximately $1.3 million. Along with the sales contract, Dalen entered into separate non-compete, non-disclosure, and consulting agreements with Metropolitan in return for $2.1 million. The sales agreement provided Dalen with a security interest in the assets of Metropolitan as well as personal guarantees by Clamage and his father, Maxwell Clamage, for payments under all the contracts.

Furthermore, in accordance with Dalen's express assent, the sales agreement contained language subordinating Dalen's security interests to NBD Bank's security interests in Metropolitan for the provision of an initial loan by NBD to Metropolitan. The defendant, Kenneth Kubiesa, then of Kubiesa, Power & Cronin, negotiated all these agreements on behalf of Dalen.

Following these agreements, Dalen entered into another agreement with NBD Bank called a Subordination and Assignment Agreement ("S&A Agreement"). The S&A agreement, again negotiated by Kubiesa on behalf of Dalen, governed subsequent loans that the bank would make to Metropolitan for ongoing operational purposes. The agreement included language that (1) subordinated Dalen's security interests to NBD's security interests in Metropolitan's assets in the event of subsequent loans to Metropolitan and (2) assigned the Clamages' personal guarantees of payment, held by Dalen, to NBD as additional collateral for its loans and did so without termination of that assignment in the event that the Clamages were released from payment of their debts by NBD. Dalen alleges that prior to his signing the S&A agreement, Kubiesa failed to disclose either of these parts of the S&A agreement. In fact, Dalen alleges that with regard to the subordination of his interests, Kubiesa had told Dalen that Dalen's security interests were subordinated to NBD's interests only for the bank's initial loan to Metropolitan. Dalen alleges that this part of the agreement directly contradicted his specific instructions to Kubiesa not to subordinate his interests with regards to loans subsequently made after the initial one unless the subsequent loans would complete the sale of Metropolitan; in other words, provide enough cash to Metropolitan to pay off its debt to Dalen. Otherwise, Dalen asserts, he wanted his security interests to remain prior to NBD's in the event of subsequent loans to Metropolitan.

Following these agreements and a subsequent loan by NBD to Metropolitan for operational purposes, Metropolitan filed for Chapter 11 bankruptcy. Metropolitan was unable to pay off its debt to Dalen. At this time, NBD had first claim on the company's assets since its security interests were prior to Dalen's. NBD negotiated a release of the Clamages and Metropolitan from their debt to the bank, and in return, NBD assigned, without notice to Dalen, the Clamages' personal guarantees of payment of Dalen's debt to Metropolitan. Metropolitan subsequently extinguished the guarantees, at which point Dalen no longer had recourse against the Clamages for their debt to him.

Dalen again retained Kubiesa to assert his claims on assets in Metropolitan's subsequent bankruptcy proceedings. Dalen alleges that Kubiesa failed to perfect Dalen's security interests in Metropolitan's assets. The result was that Dalen was an unsecured creditor for these proceedings. Furthermore, Dalen asserts that Kubiesa failed to file any claim on Metropolitan's assets even as an unsecured creditor. Dalen also asserts that Kubiesa failed in various ways to enhance Dalen's bargaining position and to influence the proceedings of the bankruptcy court in his favor as the largest unsecured creditor of Metropolitan.

Dalen is suing Kubiesa and his former law firm, Power & Cronin, for legal malpractice. Dalen has filed two counts. Count I alleges professional negligence arising from Kubiesa's negotiations and approval of the S&A agreement. Count II alleges professional negligence arising from Kubiesa's representation of Dalen during bankruptcy proceedings.

Subsequent to the events giving rise to Dalen's claim, Dalen filed for Chapter 13 bankruptcy. Consequently, the trustee in that bankruptcy proceeding was substituted in place of Dalen as plaintiff in this case, thus rendering moot the defendants' arguments that Dalen lacks

standing to proceed. The trustee's lawyer in this proceeding is the same lawyer that represented Dalen until the substitution. The response brief filed by Dalen's attorney in response to the defendants' motion to dismiss has been adopted as the response brief for the trustee. For the purposes of this opinion, the court will continue to refer to the plaintiff as Dalen.

## Analysis

The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide its merits. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). A court should dismiss a claim only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint." *Cook v. Winfrey*, 141 F.3d 322, 327 (7th Cir. 1998) (citations omitted). The court must accept all well-pleaded factual allegations in the light most favorable to the plaintiff. *Colfax Corp. v. Illinois State Toll Highway Auth.*, 79 F.3d 631, 632 (7th Cir. 1996). It must also be remembered that "the Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is a 'short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Leatherman v. Tarrant Cty. Narcotics Intelligence and Coordination Unit, et. al.*, 507 U.S. 163, 166 (1993) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

*Legal Malpractice*

To properly allege a legal malpractice claim under Illinois law, a plaintiff must plead that the defendants "(1) were the plaintiff's attorneys; (2) breached a duty of care; and (3) directly and proximately caused harm to the plaintiff as a result of their breach." *Grinnell Mutual Reins. Co. v. Franks, Gerkin & McKenna*, 2000 WL 336544 (N.D.Ill. 2000) (J. Coar) (citing *Serafin v.*

4

*Seith*, 672 N.E.2d 302, 310 (Ill. App. Ct. 1996)). In this case, the parties do not dispute the first and second elements of this test for legal malpractice claims. Rather, the defendants dispute the presence of the third element, namely whether any breach of care proximately caused damages to the plaintiffs.

*Count I*

Dalen has properly alleged a claim of legal malpractice in Count I. The issue here is whether Kubiesa's subordination of Dalen's security interests, despite Dalen's instructions to the contrary, and Kubiesa's assignment of the Clamages' guarantees to NBD are properly alleged to have caused damages to Dalen. The court finds that they have. A case similar to this one was decided by the Illinois Supreme Court in *Collins v. Reynard*, 607 N.E.2d 1185 (Ill. 1993). In *Collins*, the plaintiff claimed that the defendant-attorney "negligently drafted or approved of a sales contract because [among other things], (1) the contract did not reflect her intent to retain a first and prior security interest in and to the business and assets sold; [and] (2) [the attorney] advised her to sign a sales agreement which did not reserve a security interest in the business and the assets." *Collins*, 553 N.E.2d 69 (Ill. App. Ct. 1990), reversed on other grounds, *Collins v. Reynard*, 607 N.E.2d 1185 (Ill. 1993). As in the case at hand, "the buyer of the business defaulted on the installment contract and pledged the assets of the business to another creditor, a bank, who then held a security interest superior to that of Collins. The bank perfected its interest, took possession of the business, and sold it to another buyer." *Collins*, 553 N.E.2d at 69. The court went on to say that Collins claimed as his damages the remaining payments due under the installment contract. *See id.* Based on these allegations, the Illinois Supreme Court allowed the complaint to survive a motion to dismiss. *See Collins*, 607 N.E.2d at 1185.

5

The allegations in Count I of this case are very similar to those in *Collins* and, if anything, allege an even stronger case than in *Collins*. As in *Collins*, the plaintiff here, Dalen, is alleging attorney negligence in failing to draft a contract that reflected the plaintiff's intent to retain a first and prior security interest in the company he sold. Unlike in *Collins*, however, Dalen is also alleging that his attorney, Kubiesa, assigned personal guarantees by the buyer of the business, in this case Clamage, to the bank, NBD, as additional collateral for its later loans to the business. These guarantees vanished after Metropolitan went bankrupt, and in a later settlement with the Clamages, NBD assigned the Clamages' personal guarantees essentially back to the Clamages.

In its motion to dismiss, Power and Cronin argue that Dalen has no case under Count I because there were no assets left for distribution to Dalen after NBD's claims had been satisfied. Power and Cronin is arguing that regardless of what Kubiesa did, Dalen would not have been able to recover any assets at the time Metropolitan went bankrupt. Therefore, Power and Cronin argue, Dalen has failed to properly allege the elements of causation and damages. This argument is flawed, however. Dalen asserts that had Kubiesa acted non-negligently, at the least his security interests would have remained superior to that of NBD. Therefore, at the time of the bankruptcy, Dalen's claims would have been satisfied ahead of NBD's. As it turned out, the opposite allegedly occurred. Unclear is the proper amount of damages that Dalen may ultimately obtain, and indeed, in his complaint, Dalen has not alleged a monetary value for his damages. Nevertheless, damages in a legal malpractice action are "a factual determination ultimately based upon evidence from which monetary values can be derived." *Glass v. Pitler,* 657 N.E.2d 1075, 1079 (Ill. App. Ct. 1995). Because this determination would properly come at a later stage of litigation, Dalen's allegations that he has suffered damages and his explanations of why he has

6

suffered damages are enough for Count I to survive a motion to dismiss.

*Count II*

In this count, Dalen argues that Kubiesa, whom Dalen retained for the bankruptcy proceedings, committed professional negligence when, among other things, Kubiesa failed to perfect Dalen's security interest, failed to file an unsecured claim, and through other omissions, failed to enhance Dalen's bargaining position in order to effectively influence the overall settlement of the bankruptcy claims in Dalen's favor. Dalen further asserts in his response brief that had Kubiesa represented him properly in bankruptcy court, Dalen would have had a chance to recover some assets. He notes that Metropolitan's inventory plus accounts receivable were worth $4.1 million, while Metropolitan's debt to NBD was approximately $2.5 million. Therefore, Dalen claims, once NBD was paid off, money would have been left over to pay Dalen as the second secured creditor or the largest unsecured creditor. In any case, Dalen asks that discovery be allowed to proceed in order to determine the full extent of his alleged damages. Specifically, he wishes to retain a bankruptcy expert in order to determine how various alleged negligent omissions on the part of Kubiesa affected how much Dalen could recover in bankruptcy court.

The defendants argue that Dalen has failed to plead damages in this count. They first assert that nowhere in the complaint does Dalen allege that there would have been money left over to pay other creditors once NBD was paid. They also argue that Dalen's claims are speculative. Specifically, they quarrel with Dalen's claims that had Kubiesa represented Dalen properly, Dalen could have exerted greater influence on the outcome of the bankruptcy and that he could have had more bargaining power to effect a more favorable settlement for Dalen.

7

This court finds that Dalen has alleged causation and damages in Count II. Dalen has asserted that Kubiesa failed to perfect his security interest and further failed to file a claim on Metropolitan's assets and that these failures, among others, prevented Dalen from recovering any assets during the bankruptcy proceedings. It may be inferred from the pleadings that Dalen asserts that there was money left over to cover at least a part of his claim, and as his response brief indicates, facts may exist consistent with Dalen's allegations regarding the damages element to entitle him to relief. The defendants may be correct, however, that Dalen's arguments regarding his bargaining position may be too speculative to properly state a claim of causation and damages. *See Kirkland & Ellis v. CMI*, 1996 WL 559951, *7 (N.D.Ill. 1996) (holding that the plaintiff's "conclusory assertions that it would have obtained a favorable settlement . . .but for [the attorney's] alleged negligence and legal malpractice is wholly speculative and purely a matter of conjecture.") The other allegations regarding Kubiesa's failure to perfect a security interest and to file a claim on Metropolitan's assets, however, are enough to allow Count II to survive a motion to dismiss.

## Conclusion

For the foregoing reasons, defendants' motion to dismiss is denied.

ENTER:

JOAN B. GOTTSCHALL
United States District Judge

DATED: March 22, 2001