Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 2362 | **DATE** | 3/29/2004 |
| **CASE TITLE** | Richardson vs. Kubiesa, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   Defendants' motion for summary judgment [98-1] is granted in part and denied in part. Status set for Wednesday, April 21, 2004 at 9:30 A.M.

(11) ■ [For further detail see order attached to the original minute order.]

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

THOMAS C. RICHARDSON, Trustee of )
the Bankruptcy Estate of )
MARK G. DALEN )
)
      Plaintiff )
) Case No. 98-C-2362
vs. )
)
KENNETH T. KUBIESA, et al., ) Judge Joan B. Gottschall
)
      Defendants )
)

**DOCKETED**
MAR 3 0 2004

## MEMORANDUM OPINION AND ORDER

Plaintiff Thomas Richardson, trustee for the estate of Mark G. Dalen ("Dalen"), has brought a three-count legal malpractice complaint against Dalen's former attorney, Kenneth T. Kubiesa ("Kubiesa") and his former law firm, Power & Cronin, Ltd. ("Power"), arising out of Kubiesa's representation of Dalen's interests in the sale of Dalen's 50% share in two companies, and during the subsequent bankruptcy of one of those companies. Defendants have moved for summary judgment, arguing that certain of plaintiff's claims are barred by the two-year statute of limitations for attorney malpractice actions and that plaintiff has failed to show any dispute of material fact regarding whether Dalen was damaged as the proximate result of Kubiesa's alleged misconduct. For the reasons stated below, Defendants' motion for summary judgment is granted in part and denied in part.

-1-

(10)

## FACTUAL BACKGROUND

Dalen was a 50% shareholder in two related companies, Metropolitan Plant and Flower, Inc. ("Metropolitan") and Silkcorp Plant and Tree International Factory Outlet Franchising System, Inc. ("Silkcorp"). When disagreements arose between Dalen and the other principals, Dalen entered into negotiations for a buy-out of Dalen's shares. Dalen hired defendant Kubiesa to represent Dalen in the sale.

On March 4, 1994, Dalen entered into a Sales Agreement to sell his shares to one of the remaining principals of Metropolitan, Edward Clamage ("Clamage"), for approximately $3.3 million.[1] The agreement provided that a portion of the purchase price would be paid up front and a portion would be paid by Metropolitan over time. As collateral for future payments due Dalen, Clamage granted Dalen a security interest in all of Metropolitan's and Silkcorp's assets. Dalen testified that, before the agreement was finalized, he instructed Kubiesa to ensure that Dalen's security interest would be (a) secured, (b) second in priority only to an outstanding $1.1 million loan extended by NBD Bank ("NBD") to Metropolitan, and (c) backed up by a personal guarantee from Clamage and his father. Dalen testified that he did not review the Sales Agreement before signing it, but that he believed at the time that the agreement reflected his instructions.

To facilitate Metropolitan's financing of the purchase of his shares, on April 18, 1994, Dalen entered into a Subordination Agreement and Assignment (the "S&A") with NBD which provided that Dalen would subordinate his interest in the assets of Metropolitan and Silkcorp to NBD as additional collateral for NBD's loan to Metropolitan. Dalen testified that he instructed Kubiesa to negotiate the S&A so that Dalen's interest was second only to the $1.1 million outstanding debt to NBD. At the time Dalen entered into the S&A, he did not believe that his interest would be

---

[1] The exact purchase price is disputed.

subordinated to new loans extended by NBD to Metropolitan. However, the undisputed facts reflect that under the S&A Dalen's security interest was subordinated, without limitation, to any and all debt owed to NBD by Metropolitan and Silkcorp, including future extensions of credit. Moreover, Dalen testified that, by signing the S&A, he unknowingly assigned to NBD his interest in the personal guarantees provided by the Clamages. Plaintiff alleges that Kubiesa committed malpractice by failing to protect Dalen's security interest during negotiation of the S&A and failing to inform Dalen of the effect of the S&A on that security interest.

By late 1995, Metropolitan encountered financial difficulties and stopped making payments to Dalen under the Sales Agreement. Over the course of the next few months, Dalen learned that his security interest was at risk. By November of 1995, Dalen learned that NBD had increased its loan to Metropolitan to $1.6 million and that, pursuant to the S&A, his interest was subordinated to the additional loan amount. That month, Dalen also discovered that Kubiesa had never recorded the necessary UCC statements to secure Dalen's security interest in Metropolitan's assets. By December of 1995, Dalen was told that Metropolitan's inventory was insufficient to cover its obligations to NBD and that, consequently, Dalen's security interest was jeopardized. On January 30, 1996, at a meeting at NBD regarding a forbearance for Metropolitan, Dalen learned that he was not a secured creditor and that he was in "last position" to make a claim against Metropolitan's assets. On February 14, 1996, Metropolitan filed for protection under the bankruptcy code.

Dalen has testified that, once he realized his position was jeopardized, he repeatedly asked Kubiesa why he had not recorded the UCC statements in connection with the sale. Dalen testified that, when confronted, Kubiesa repeatedly reassured Dalen that filing the UCC statements "would not have made a difference." Dalen testified that – because of Kubiesa's assurances – it was not until November of 1997, during a meeting with new counsel, that Dalen became aware that Kubiesa

"may have breached his professional responsibility in this regard."

During the course of Metropolitan's bankruptcy, Metropolitan's trustee brought an adversary complaint against Dalen, alleging that the sale of Dalen's shares constituted a fraudulent conveyance. On May 7 or 8, 1996, a mediation conference was held regarding that adversary action. At the conference, a $70,000 settlement demand was presented to Dalen through Kubiesa. Kubiesa has testified that, on May 9, 1996, Dalen was made aware of the demand but rejected it, telling Kubiesa that he "had no intention of paying any money" and that "he had no money." Kubiesa asserts that he rejected the settlement demand on Dalen's instructions. Dalen disputes Kubiesa's account of the settlement demand. Dalen testified that Kubiesa never informed him of the settlement conference, the settlement demand or the litigation risks that Dalen was facing. Dalen testified that he heard of the demand only when he received a call from Clamage, but did not realize that it was a serious offer. Dalen testified that, had Kubiesa discussed the settlement demand with him, he would have been willing and able to settle the litigation for less than $100,000.

After settlement discussions proved unsuccessful, Metropolitan's trustee moved for summary judgment on its fraudulent conveyance claim against Dalen. While that motion was pending, in October 1997, Dalen replaced Kubiesa with attorney David Levin. The court ultimately granted summary judgment in favor of the trustee and entered judgment against Dalen in the amount of $1.9 million.

On April 16, 1998, Dalen sued Kubiesa and Power for malpractice. After Dalen entered bankruptcy, Thomas Richardson, trustee for Dalen's estate, took over as plaintiff. Plaintiff's current third amended complaint alleges that Kubiesa committed malpractice by (a) failing to follow Dalen's instructions in negotiating the S&A or to record the proper UCC statements and, thereby, failing to secure Dalen's interest in Metropolitan's assets (Count I), (b) failing to take various steps during the

bankruptcy to ensure that Dalen could recover on his claim against either Clamage or the Metropolitan estate (Count II), and (c) failing to inform Dalen of the litigation risks presented by the Metropolitan estate's adversary action and neglecting to inform Dalen of an opportunity to settle the adversary action for less than $100,000 (Count III).

## ANALYSIS

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When considering a motion for summary judgment, the court must view the record and any inferences to be drawn from it in the light most favorable to the party opposing summary judgment. *See Griffin v. Thomas*, 929 F.2d 1210, 1212 (7th Cir.1991). The party opposing summary judgment may not rest upon the pleadings, but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is no genuine issue for trial unless there is "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Id.* The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

### *Statute of Limitations*:

Defendants first allege that Counts I and III of plaintiff's complaint are barred by the applicable two-year statute of limitations, 735 ILCS § 5/13-214.3, which provides that:

> (b) An action for damages based on tort, contract, or otherwise (i) against an attorney arising out of an act or omission in the performance of professional services . . . must be commenced within 2 years from the time the person bringing the action knew or reasonably should have known of the injury for which damages are sought.

-5-

735 ILCS § 5/13-214.3.[2]

The "discovery rule" of Section 5/13-214.3 delays the commencement of the applicable limitations period until claimants know (or reasonably should know) of their injury and are aware that the injury was wrongfully caused. *See, e.g., Jackson Jordan, Inc. v. Leydig, Voit & Mayer*, 633 N.E.2d 627, 631 (Ill.1994). The time at which a party has the requisite knowledge under the discovery rule to maintain a cause of action is ordinarily a question of fact for the jury. *Id.* at 631. Summary judgment on that issue is appropriate only if the undisputed facts allow for only one conclusion. *Id.*

Defendants argue that Count I of plaintiff's complaint is time-barred because Dalen was aware of his injury no later than January of 1996, when he learned that his interest in Metropolitan's assets was unsecured. However, the facts regarding when Dalen should have known of his malpractice cause of action against Kubiesa are in dispute. While defendants are correct that the undisputed facts reflect that Dalen was aware of his injury as of January 1996, plaintiff disputes that Dalen knew at that time that his injury was wrongfully caused by Kubiesa's malpractice. Dalen testified that, after discovering that he was unsecured, Kubiesa repeatedly reassured Dalen that his failure to file the UCC statements had no impact on Dalen's security interest. A reasonable jury could find that, because of Kubiesa's assurances, Dalen could not have reasonably known of his cause of action until November of 1997 – when Dalen's new counsel informed him of Kubiesa's errors. *See, e.g., Jackson Jordan*, 633 N.E.2d at 630-31; *Nolan v. Johns-Manville Asbestos*, 421 N.E.2d 864, 869 (Ill. 1981). Because the facts support more than one conclusion, summary judgment

---

[2] Public Act 89-7, which amended this section, was held unconstitutional in its entirety by the Supreme Court of Illinois in *Best v. Taylor Machine Works*, 689 N.E.2d 1057 (Ill. 1997). The reinstatement of the limitations language from the prior version of the statute (shown here) was recognized in *Morris v. Margulis*, 718 N.E.2d 709 (Ill. App. Ct. 1999).

on the statute of limitations issue as to Count I is not appropriate.

Defendants' statute of limitations argument regarding Count III is equally unavailing. Defendants argue that Count III – which alleges that Kubiesa failed to inform Dalen of the May 1996 opportunity to settle the adversary action – is barred by the two-year statute of limitations because that claim was not added until plaintiff's third amended complaint in 2002. However, the facts regarding when Dalen knew or should have known about the mediation and the settlement offer are in dispute. Kubiesa claims that Dalen knew about the settlement offer in May of 1996. Dalen, on the other hand, claims in his affidavit that Kubiesa never told him about the May 1996 mediation or the settlement offer that came out of that mediation. Dalen alleges that, because he was not advised by his attorney, he did not know that a serious settlement offer was on the table in May of 1996. Dalen alleges that he did not find out about Kubiesa's conduct – and, therefore, did not know of his malpractice claim – until he was being prepared for his April, 2002 deposition. Because the facts regarding when Dalen should have known of his claim are in dispute, the court cannot, at this point, resolve defendants' statute of limitations argument on Count III as a matter of law.[3]

### *Failure to Establish Material Factual Disputes on the Elements*:

Defendants next argue that summary judgment is warranted because plaintiff has failed to show a material factual dispute on critical elements of his malpractice claims. To succeed in his claim for legal malpractice, plaintiff must prove (1) the existence of an attorney-client relationship;

---

[3] Defendants alternatively request additional discovery on Count III, claiming prejudice from the fact that plaintiffs did not raise Count III until after plaintiff's deposition. However, defendants had ample opportunity to object to the addition of Count III back in May 2002 – months before the close of discovery – when plaintiff originally sought leave to amend. Defendants did not object to plaintiff's motion for leave to amend in May of 2002 and did not argue that the amendment would be unduly prejudicial or would require further discovery. Defendants' current request for additional discovery – made for the first time over one year after plaintiff sought leave to add Count III – is, therefore, denied as untimely.

(2) a breach of a duty arising from that relationship; and (3) that the breach of duty proximately caused damages. *See Belden v. Emmerman*, 560 N.E.2d 1180, 1181 (Ill. App. Ct.1990). Because Illinois law does not apply the *res ipsa loquitur* doctrine to malpractice claims, Illinois courts require that the elements of malpractice must be established through expert testimony. *Barth v. Reagan*, 564 N.E.2d 1196, 1199-1201 (Ill. 1990). Plaintiffs are excused from that requirement only if plaintiff's proof is within the common knowledge of a layperson. *Id.*

As to Count I, plaintiff has failed to point to any facts – let alone expert evidence – regarding whether Kubiesa's failure to secure Dalen's interest in Metropolitan's assets proximately caused any damage to Dalen. To the contrary, plaintiff's own expert, Bruce D. Wald, testified in his deposition that Dalen's damages were speculative. When asked at his deposition whether Kubiesa's alleged misconduct with regard to the negotiation of the S&A caused any damage to Dalen, Wald responded:

> I have no opinion because it's extremely speculative as to what damages, <u>if any</u>, were caused by Kubiesa's failure under the assumptions of my opinion to tell Dalen that future advances were in the subordination agreement in favor of NBD bank.
>
> I could certainly make arguments that they are and I could certainly make arguments that they aren't, but I'm not opining as to what the damages are. I think it's way too speculative because all the myriad things that happened." (Wald Tr. 18-19 (emphasis added).)

In his expert report, Wald, likewise, opined that "[a]t this time, I am unsure what damages, <u>if any</u>, may have resulted from this failure to perfect Dalen's security interest in the Debtor's assets." (Def. Rule 56.1 Statement of Facts at 3 (emphasis added).) To survive summary judgment, plaintiff must present facts that would allow a reasonable juror to find that Kubiesa's misconduct was the proximate cause of damages suffered by Dalen. Plaintiff is not entitled simply to rest on the allegations of his pleadings. Plaintiff has pointed to no facts from the record that refute his expert's testimony on the issues of proximate cause and damages with regard to Count I and, therefore,

-8-

defendants are entitled to judgment as a matter of law on that count.

In Count II, plaintiff alleges that Kubiesa committed malpractice by failing to take various steps to influence proceedings and recover on Dalen's claim during the Metropolitan bankruptcy. For example, plaintiff alleges that Kubiesa neglected to (a) take steps to influence the plan of reorganization, (b) argue that Dalen's interest had been perfected, and (c) object to the valuation of Dalen's claim. However, plaintiff has advanced no expert testimony regarding the applicable standard of care or whether the misconduct described in Count II constituted malpractice. In fact, plaintiff's expert report contains no reference to the alleged misconduct underlying Count II whatsoever and plaintiff's expert did not provide any testimony regarding that count in his deposition. Moreover, the "common knowledge" exception to Illinois' expert testimony requirement does not apply here; understanding the significance of the misconduct alleged in Count II requires knowledge of the bankruptcy process beyond the ken of the average juror. Plaintiff's failure to present any expert testimony on the elements of Count II is fatal to that claim. *See, e.g., Barth*, 564 N.E.2d at 1199-1201.

As to Count III, defendants argue that summary judgment is warranted because the undisputed facts show that Dalen was informed of the May 1996 settlement offer and told Kubiesa that Dalen "had no money" to pay a settlement and, in any event, was unwilling to pay any money to settle the adversary action. However, the material facts underlying Count III are in dispute. In his affidavit, Dalen avers that Kubiesa never informed him of the settlement offer, denies that he told Kubiesa that he would not settle the claim, and asserts that he would have been willing and able to settle the litigation for less than $100,000 had he known that a mediation had resulted in a serious settlement offer. Count III is also supported by the required expert testimony. Plaintiff's expert witness opined that Kubiesa's conduct regarding the settlement negotiations violated the applicable

standard of care and that the violation proximately caused damage to Dalen. When viewed in the light most favorable to plaintiff, plaintiff has shown a genuine dispute of material fact as to Count III and, therefore, defendants' motion for summary judgment on that count is denied.

## CONCLUSION

For the reasons stated above, defendant defendants' motion for summary judgment is granted as to Counts I and II of plaintiff's complaint and denied as to Count III of the complaint.

ENTER:

JOAN B. GOTTSCHALL
United States District Judge

DATED: March 29, 2004